UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH LAVINE,

      Plaintiff,

v.                              CASE No. 8:13-CV-1210-T-23TGW

SAGO NETWORKS, LLC.

      Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff, who alleges that the defendant violated the overtime pay provision of the Fair Labor Standards Act, settled his claims with the defendant except for his attorney's fee and costs. Consequently, the plaintiff filed this Motion for Award of Reasonable Attorneys' Fees and Costs, requesting an attorney's fee of $19,363.25, and costs and expenses of $2,243.69 (Doc. 25). The defendant argues that the amount of the attorney's fee is unreasonable, and that the plaintiff failed to support adequately the requested attorney's fee and costs (Doc. 30).

The motion was referred to me for a report and recommendation (Doc. 31). Having considered the materials submitted and the governing legal

standards, I recommend that the plaintiff be awarded an attorney's fee of $11,137.00 and $644.30 in taxable costs.

I.

The plaintiff worked as a wireless technician for the defendant, which provides cellular telephone tower servicing and maintenance (Doc. 1, ¶¶5, 15, 34, 35). The plaintiff asserts that he regularly worked more than 40 hours weekly, but that the defendant paid him his straight hourly wage for each hour worked over 40 in a week (id., ¶¶38, 39). The defendant told the plaintiff that he was not entitled to overtime compensation because he was an independent contractor (id., ¶55).

In May 2013, the plaintiff filed this lawsuit alleging that the defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 207, by failing to pay the plaintiff overtime wages (Doc. 1). Specifically, the plaintiff alleged that he was misclassified as an independent contractor and, consequently, he should have been paid at the overtime rate of one and one-half times his regular hourly rate for hours worked over 40 in a week (id., ¶¶74, 76). The plaintiff sought payment of the wages owed, an equal amount of liquidated damages, and payment of his attorney's fee and costs (id., pp.

9-10).  The defendant filed an answer denying the plaintiff's allegations that it violated the FLSA (Doc. 5)

Two months after entry of the Case Management Order, the parties settled the lawsuit in mediation with the exception of the plaintiff's attorney's fee and costs, which the parties agreed to submit to the court for resolution (Docs. 19, 20).  At the time the case was settled, the parties had exchanged multiple sets of written discovery and documents, filed two discovery related motions, and deposed the defendant's corporate representative (Doc. 25, ¶2; Docs. 11, 13).  The plaintiff also sought to file an amended complaint (Doc. 18).

A stipulated judgment in favor of the plaintiff and against the defendant in the amount of $8,000 was approved by the court (see Docs. 21-24).  Thereafter, the plaintiff filed this Motion for Award of Reasonable Attorneys' Fees and Costs, seeking an attorney's fee of $19,363.25, costs of $1,043.69, and $1,200 for the fee of his attorney's fee expert (Doc. 25, p. 8).

In support of the motion, plaintiff's counsel submitted time records and an affidavit from his fee expert, attorney Matthew K. Fenton, stating that the requested attorney's fee is reasonable (Docs. 25-1, 25-2).  The

defendant responds that the plaintiff's claim for attorney's fees and costs is "unreasonable and far exceeds any entitlement" (Doc. 30, pp. 1-2). In this connection, the defendant submitted an affidavit from its fee expert, attorney Alva L. Cross, that the attorney's fee of $19,363.25 "exceeds the reasonable range of fees that would ordinarily ... be charged for the prosecution of such a case" (Doc. 30-5, ¶6). The plaintiff then filed, with leave of court, a reply brief (Docs. 24, 32, 37). The court subsequently held oral argument on the motion.

II.

Plaintiff's counsel seeks an award of attorney's fees pursuant to 29 U.S.C. 216(b) of the FLSA, which provides that, in addition to any judgment awarded to the plaintiff, the court shall allow a reasonable attorney's fee to be paid by the defendant and the costs of the action. Judgment was entered in the plaintiff's favor and against the defendant in the amount of $8,000 (Doc. 24). Therefore, the parties agree that the plaintiff is entitled to a reasonable attorney's fee and taxable costs pursuant to the FLSA (Docs. 19, 20, 30). See Wolff v. Royal American Management, Inc., 2013 WL 5433773 at *4 (11th Cir. 2013).

The FLSA directs that the successful plaintiff be awarded a "reasonable" attorney's fee. 29 U.S.C. 216(b). The federal lodestar approach is the foundation for setting reasonable fee awards pursuant to the FLSA. Padurjan v. Aventura Limousine & Transportation Service, Inc., 441 Fed. Appx. 684, 686 (11th Cir. 2011). This method requires the court to determine a "lodestar figure" by multiplying a reasonable hourly rate for the services of the prevailing party's attorney by the number of hours reasonably expended on the litigation. Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988); see also Galdames v. N&D Investment Corp., 432 Fed. Appx. 801, 806 (11th Cir. 2011). The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable. Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1299, 1303. Once the lodestar is determined, the court considers whether an adjustment of the lodestar for the results obtained is appropriate. Moton v. Nathan & Nathan, P.C., 297 Fed. Appx. 930, 932 (11th Cir. 2008). However, "[a] properly calculated lodestar amount 'is itself strongly presumed to be reasonable.'" Galdames v. N&D Investment Corp., supra, 432 Fed. Appx. at

806 (quoting Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1150 (11th Cir. 1993)).

As indicated, the plaintiff contends that he is entitled to a court awarded attorney's fee of $19,363.25 (Doc. 25, p. 8). The defendant argues that the plaintiff's requested fee and costs are unreasonable (Doc. 30, pp. 1-2). Specifically, the defendant contends that the hourly rates of the attorneys are excessive, and identifies in exhibits attached to its opposition memorandum the specific time entries which it believes should be reduced or eliminated (Docs. 30-1, 30-2, 30-4).[1] Alternatively, the defendant asks the court to reduce the plaintiff's fee award request by 75% (Doc. 30, p. 2). The defendant, however, provides no justification for an across-the-board reduction. Therefore, the court should analyze the request in accordance with the lodestar approach.

A. HOURLY RATES

Federal courts first determine a reasonable hourly rate for the services of the prevailing party's attorney. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by

---

[1]Page references correspond to the numbers assigned by CM/ECF.

lawyers of reasonably comparable skills, experience, and reputation." <u>Norman</u> v. <u>Housing Authority of City of Montgomery</u>, <u>supra</u>, 836 F.2d at 1299.

The applicant bears the burden of "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." <u>Id</u>. at 1303. "Testimony that a given fee is reasonable is therefore unsatisfactory." <u>Id</u>. at 1299. Rather, "the best information available to the court is usually a range of fees set by the market place." <u>Id</u>. at 1301. Furthermore, "[t]he court ... is itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees." <u>Id</u>. at 1303.

Plaintiff's lead counsel is Richard Celler (Doc. 25-1). He requests a fee based on an hourly rate of $425 (<u>id</u>., ¶7). The defendant argues that the requested rate is too high, and contends in its memorandum that a reasonable hourly rate for Celler is $300 (Doc. 30, pp. 9-10). At the hearing on this matter, defense counsel contended that Celler should be awarded an hourly rate of $275.

Celler, who has practiced law since 1999, has devoted his practice exclusively to matters involving employment discrimination and the FLSA

(Doc. 25-1, ¶¶1, 4). Further, Celler created and managed Morgan & Morgan's National Labor and Employment law group (id., ¶¶1, 6). Celler's hourly rate was $300 until January 2013, when he increased it to $425 (id., ¶7).

In support of the reasonableness of Celler's hourly rate, the plaintiff relies on the declaration of Matthew K. Fenton (Doc. 25-2). Fenton practices labor and employment law and is a shareholder in the law firm of Wenzel Fenton Cabassa, P.A. (id., ¶¶1, 4). Fenton, who states that he is familiar with the hourly rates for attorneys in the Tampa Bay area with comparable experience and reputation, opines that Celler's hourly rate of $425 is reasonable because Celler "is a highly qualified, knowledgeable, [and] tenacious attorney" (id., ¶¶11, 12).

The defendant, on the other hand, presents the affidavit of its fee expert, attorney Alva L. Cross, who opines that Celler's requested hourly rate is excessive (Doc. 30-5, ¶5). Cross, who is the managing shareholder of Cross HR Law, practices labor and employment law and she is personally familiar with plaintiff's counsel (id., ¶¶3, 4). Cross opines that "the hourly rates sought are excessive and not consistent with the general range of hourly rates charged by attorneys of comparable experience, skill and ability in the Middle District

of Florida" (id., ¶5). Cross states that, in her experience and opinion, a reasonable rate "for an attorney with Mr. Celler's experience and reputation in the Tampa area would be no more than $300 per hour" (id.).

Considering the specifics of this case, and my knowledge of prevailing market rates in Tampa, a reasonable hourly rate for plaintiff's counsel is $300.   See Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1303 (the court is itself an expert); Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (same). Thus, as someone who regularly handles attorney fee motions, it is my experience that a reasonable hourly rate in this market for non-complex FLSA litigation ranges from $200 to $300. Taking into consideration counsel's years of legal experience and expertise in FLSA cases, an hourly rate of $300 is reasonable. As I have stated previously, I reserve higher hourly rates for the most skilled attorneys litigating complex cases. See Ottaviano v. Nautilus Ins. Co., 717 F.Supp.2d 1259, 1270 (M.D. Fla. 2010).

In making this determination, I have considered the opinions of each party's fee expert, and I give great weight to the opinion of the defense fee expert, Cross, whose opinion is more consistent with my knowledge and

experience of a reasonable hourly rate for a non-complex FLSA case. Further,

Fenton's opinion that $425 is a reasonable hourly rate for Celler is anomalous

when considering that Fenton, who has several more years of legal experience

than Celler, does not even charge that rate (Doc. 25-2, ¶12).   Additionally,

Cross received no monetary compensation for her opinion, whereas Fenton

was paid $1,200 for his expert opinion (id., ¶10; Doc. 25, p. 8).  See Travieso

v. Travieso, 474 So.2d 1184, 1186 (Fla. 1985) (noting that expert fee opinions

should be provided as a courtesy except in extraordinary circumstances).

      Significantly, an hourly rate of $300 is in accord with rates

awarded in comparable cases in the Tampa Bay area.  See, e.g., Swetic v.

Silverberg Jewelry Co., 2012 WL 555960 at *3 (M.D. Fla) (awarding Celler

in 2012 an hourly rate of $250 for prosecuting a single-plaintiff FLSA overtime

compensation case); Campbell v. South Florida Barbeque, Inc., 2011 WL

6005282 at *2 (M.D. Fla.) (awarding Celler an hourly rate of $275 in a

multiple-plaintiff FLSA case). The plaintiff also cites Tampa federal court

cases in which labor attorneys were awarded hourly rates of $300 (see Doc.

25-1, p. 4).

On the other hand, the plaintiff has not cited any case where counsel was awarded an hourly rate of $425. Although the plaintiff cites to Middle District of Florida decisions in which attorneys were awarded hourly rates of more than $300 (Doc. 25, pp. 5-6), those cases were outside this division and are not necessarily apposite. See Cullens v. Georgia Department of Transportation, 29 F.3d 1489, 1494 (11th Cir. 1994) ("The rate of attorney's fees is that of the place where the case is filed."). Similarly, while Celler's hourly rate of $425 may be acceptable in South Florida, where Celler is located, South Florida's hourly rates are generally higher than Tampa's. Notably, Celler's requested hourly rate of $425 reflects an increase of $125 over his rate of $300 just barely more than one year ago.

Celler argues that his experience in this area of the law warrants an hourly rate of $425 (see Doc. 25, p. 5). It is acknowledged that plaintiff's counsel has a substantial number of years of legal experience and, as indicated, I have accounted for counsel's substantial experience in the hourly rate of $300. However, "[a] prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." Ceres

Environmental Services, Inc. v. Colonel McCrary Trucking, LLC, 476 Fed.

Appx. 198, 203 (11th Cir. 2012) (quoting American Civil Liberties Union of

Georgia v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999)).

Furthermore, the attorney's experience is not the only

consideration when determining the reasonable hourly rate.   Among other

things, the difficulty of the case is an important factor.   See, e.g., Valencia v.

Affiliated Group, Inc., 674 F.Supp.2d 1300, 1308 (S.D. Fla. 2009) (rejecting

counsel's request for an hourly rate higher than market rate based on his years

of legal practice because it was not a complicated case); Sclafani v. I.C.

System, Inc., 2010 WL 1029345 (S.D. Fla.) (unpub. dec.) (finding "no support

for the $350.00 hourly rate requested [in a consumer protection case] because

the case was not novel or difficult").   Accordingly, in setting a reasonable

hourly rate I also considered that this was a non-complex, single-plaintiff

FLSA case which plaintiff's counsel characterized as a "a clear cut, well

documented, overtime violation" (Doc. 37, p. 1; see also id., p. 4 ("a clear

FLSA violation")).   Additionally, much of lead counsel's time comprised basic

legal tasks; there is no showing that the matter presented complex or novel

issues which required highly specialized skill.   In sum, under these

circumstances, it is unreasonable to charge the opposing party an hourly rate of $425. Rather, for the foregoing reasons, I recommend that the hourly rate of plaintiff's lead counsel, Richard Celler, be set at $300.

Additionally, the plaintiff seeks compensation for the services of attorney Amanda Kayfus and three paralegals who worked on this case. The plaintiff requests an hourly rate of $250 for Kayfus, a second-year attorney, and a hourly rate of $95 for the paralegals (Doc. 25-1, ¶¶9, 10).

Plaintiff's fee expert Fenton opines, in a conclusory manner, that Kayfus's hourly rate is "a reasonable rate for lawyers of similar qualifications" (Doc. 25-2, ¶12). On the other hand, defense fee expert Cross opines, "[b]ased on prior awards within the Middle District for junior-level associates with Morgan & Morgan ... a fee of $145 per hour would be a reasonable hourly rate for Ms. Kayfus' time" (Doc. 30-5, ¶5). Notably, the plaintiff himself cited caselaw that the hourly rate for Orlando attorneys with less than three years experience ranges from $125 to $175 (Doc. 25, p. 7). In my experience, absent evidence of special skills or extraordinary circumstances, $150 is a reasonable hourly rate in this division for a second-year attorney. Accordingly, I recommend that Kayfus's hourly rate be set at $150.

Finally, the plaintiff requests compensation for the work of the paralegals, identified in the billing records as PR, JMR, and LN, at an hourly rate of $95 (Doc. 25-1, ¶10). The defendant did not dispute the reasonableness of this hourly rate. Furthermore, in my experience, an hourly rate of $95 is reasonable for paralegal services. Accordingly, I recommend that the paralegals be awarded an hourly rate of $95.

Therefore, for the foregoing reasons, I recommend that the hourly rates of plaintiff's counsel be set as follows:

| Billkeeper | Rate per hour |
|---|---|
| Richard Celler | $300 |
| Amanda Kayfus | $150 |
| paralegal PR | $ 95 |
| paralegal JMR | $ 95 |
| paralegal LN | $ 95 |

## B. REASONABLENESS OF THE NUMBER OF HOURS EXPENDED

The second half of the lodestar equation requires the court to calculate the number of hours reasonably expended on the litigation. Thus, "[e]ven when a party prevails, the district court still must determine whether time was reasonably expended, and if it was not, that time should be excluded

from the fee calculation." <u>Perez</u> v. <u>Carey International</u>, 373 Fed. Appx. 907, 911 (11th Cir. 2010).

It is the fee applicant's burden to document adequately the hours expended. <u>Hensley</u> v. <u>Eckerhart</u>, 461 U.S. 424, 437 (1983).  In this regard, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." <u>Norman</u> v. <u>Housing Authority of City of Montgomery</u>, <u>supra</u>, 836 F.2d at 1303.

Furthermore, "excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed." <u>Id</u>. at 1301.  In other words, fee applicants must use billing judgment. <u>Id</u>. "[W]here the time ... claimed seem[s] expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience." <u>Id</u>. at 1303.

The plaintiff seeks compensation for 51.85 hours of work performed in this case by two attorneys and three paralegals (Doc. 25-1, ¶11). This time was spent drafting pleadings and discovery requests, communicating with the client and opposing counsel, participating in a deposition and the

-15-

mediation, finalizing the settlement, and drafting the attorney's fee motion (id., Ex. 1, pp. 6-10). The plaintiff asserts that the time "was all reasonably and necessarily incurred in pursuit of this case" (id., ¶3).

In support of the reasonableness of the hours requested, the plaintiff submitted the declaration of his fee expert (Doc. 25-2). Fenton, who reviewed the file in this case, opined that the time spent was reasonable because the case "involved more discovery and motion practice than should have been necessary had Defendant stipulated to liability early in the case" (id., ¶13).

The defendant argues that the number of hours claimed by the plaintiff are unreasonable, and that the attorney's fee award should be reduced due to, inter alia, inadequate descriptions in the billing records, non-compensable clerical work, excessive time, and moot arguments and motions (Doc. 30, pp. 1-2). In support of its contention, the defendant presented the affidavit of its fee expert who opined that the "total of $19,363.25 in attorneys' fees ... is not reasonable for this type of case, and exceeds the reasonable range of fees that would ordinarily ... be charged for the prosecution of such a case" (Doc. 30-5, ¶6). The defendant identifies in exhibits attached to its opposition

memorandum the specific time entries which it argues should be reduced or eliminated (Docs. 30-1, 30-2, 30-4). Each of those specific objections is addressed below.

### 1. "Inadequate descriptions"

The defendant argues that several time entries lack sufficient detail as to what tasks were performed and their relation to the successful claim in this case (Doc. 30, p. 4, Ex. A; Doc. 30-1). Specifically, the defendant asserts that "multiple time entries reference Verizon" (Doc. 30, p. 4). The plaintiff's billing records include two time entries totaling 6.4 hours that involve the review of "Verizon records" (Doc. 25-1, p. 8; 9/26/13 and 10/1/13). The defendant argues, reasonably enough, that "Verizon records have no place in this litigation" because Verizon is not a defendant (Doc. 30-1, p. 1).

The plaintiff acknowledges the defendant's contention that his billing records contain entries that appear to be associated with a different case, but asserts that "[t]hese entries ... are directly related to the instant case" (Doc. 32, ¶8). However, the plaintiff failed to explain in his reply memorandum, or at the hearing, the connection between the Verizon records and this case. Furthermore, it is not apparent how records from Verizon, which was not a

defendant, relate to this case. Therefore, there is no basis to conclude that counsel's time spent reviewing Verizon records were reasonably incurred in connection with this claim. Accordingly, I recommend that Celler's time entries dated 9/26/13 and 10/1/13, for 5.3 hours and for 1.1 hours, respectively, be disallowed.[2]

The defendant also objects to .5 hours for a "[c]onference with witness identified by Plaintiff" (Doc. 30-1, p. 1). The defendant argues that the name of this witness is not identified, and that such identification is necessary because that conference was not necessarily connected with this case. Thus, the defendant explains that plaintiff's counsel was initially contemplating a class action lawsuit and, therefore, the conference may have concerned the claim of a potential class action candidate who did not join this lawsuit (id.). Under these circumstances, the plaintiff should have explained how this conference was related to this case, but he did not, despite ample opportunity to do so. Therefore, Celler's time entry of .5 on 5/6/13 is properly deducted.

---

[2]It is recognized that the 9/26/13 entry lists tasks other than reviewing Verizon records. However, since multiple tasks were block-billed in that entry, the court cannot determine how much of that time related to Verizon. Therefore, it is appropriate to discount the entire entry.

The defendant also argues that .2 billed by Celler for leaving a telephone message with opposing counsel is excessive (id.). The defendant's contention that it does not take 12 minutes to leave a phone message is well-taken (id.) and, therefore, I recommend that this time entry on 6/3/13 be reduced by .1 to .1.

The remainder of the defendant's objections under this heading are unpersuasive. For example, the defendant argues as excessive .5 hours for preparing an outline of discovery requests and conferring with opposing counsel regarding the case management report (id.; 7/8/13). The defendant essentially argues that less time should have been billed because the plaintiff's discovery requests were boilerplate (id.).

Notably, "[t]he measure of reasonable hours is ... not the least time in which it might theoretically have been done." Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1306. Thirty minutes for preparing discovery requests (for which most counsel use a template) and conferring with opposing counsel regarding case management deadlines does not appear unreasonable, and the defendant does not suggest how much time those tasks should have taken. See id. at 1301 ("As the district court must be reasonably

precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents."). Therefore, I recommend that this conclusory objection be rejected.

The defendant contends that .1 billed by LN for filing of a notice of appearance is not compensable because the billing records do not identify who "LN" is (Doc. 30-1, pp. 1-2; 10/9/13). It is apparent from the amount billed ($9.50) that this task was done by a paralegal (see Doc. 25-1, p. 9). Additionally, the defendant objects to a .1 entry for a telephone call to "OC" because the record does not identify who OC is (Doc. 30-1, p. 2). However, it is apparent from the defendant's memorandum that it knows "OC" is a shorthand reference to "opposing counsel" (see id.). Therefore, neither of those objections is meritorious.

The defendant also objects to .4 hours for a "review of file" because counsel reviewed the file twice that day (id., p. 1; 9/23/13). The billing record reflects that the file was reviewed for two different purposes on that date, and this small time expenditure also included a telephone call to resolve the case (see Doc. 25-1, p. 8). Therefore, this objection is unavailing.

In sum, under the category of "Inadequate Descriptions," I recommend that Celler's time be reduced by 7 hours.

### 2. "Clerical or excessive partner time"

The defendant objects to numerous time entries by paralegals on the basis that they performed non-compensable clerical work. Work by paralegals is recoverable "to the extent that the paralegal performs work traditionally done by an attorney." Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988). However, costs associated with solely clerical tasks are overhead expenses that are not compensable in the attorneys' fee award. See Allen v. United States Steel Corp., 665 F.2d 689, 697 (5th Cir. 1982). Notably, plaintiff's counsel acknowledges that he delegated some "clerical or non-attorney tasks to his paralegals" (Doc. 37, p. 2, ¶2).

The defendant has identified several entries where paralegals billed for time spent scheduling dates for mediation, conferences, and other appointments. Scheduling appointments is quintessential clerical work that is not chargeable to the opposing party. See Allen v. United States Steel Corp., supra; Swetic v. Silverberg, supra, 2012 WL 555960 at *4. Accordingly, the following time entries are appropriately discounted:

| | |
|---|---|
| 7/3/13 | .2 by JMR for setting up a conference call regarding case management report |
| 8/7/13 | .1 by PR for scheduling 30(b)(6) deposition |
| 8/16/13 | .1 by PR for scheduling mediation date |
| 8/19/13 | .2 by PR to coordinate mediation date |
| 8/27/13 | .1 by PR to coordinate a conference call |
| 8/29/13 | .1 by PR regarding deposition dates |
| 9/17/13 | .2 by PR regarding coordinating a conference call and sending an email |
| 9/23/13 | .1 by PR to confirm telephone call |
| 10/3/13 | .1 by Celler calling Mary Lau's office regarding the mediation |
| 10/7/13 | .1 by Celler to confirm mediation date |

Additionally, the defendant's contention is well-taken that calendaring case deadlines, and sending an e-mail requesting the plaintiff to contact the office, are clerical tasks (Doc. 30-2, pp. 1-2). Accordingly, I recommend that .5 and .1 charged by PR for those tasks on 8/12/13 and 9/3/13 be deducted.

Similarly, it is not apparent why the services of a paralegal are necessary to check on the status of service of process (id.). Accordingly, I recommend that communications with the process server (JMR's entries for .15 and .1 on 5/6/13 and 5/15/13) be deducted. Moreover, the plaintiff's firm sending a "welcome packet" to the plaintiff and a letter to the Department of Labor are clerical work (Doc. 30-2, p. 1). Accordingly, JMR's billing of .1 and .2 for those tasks on 4/24/13 are also appropriately deducted.

The defendant also objects to .5 hours for the preparation and service of a deposition notice (id., p. 2). It is appropriate to reduce that 9/23/13 entry by .1 because a lawyer should not charge for the mere sending of a notice.

However, the defendant's remaining objections based on clerical work are not meritorious. Specifically, time billed by paralegals for preparing and filing documents in CM/ECF is, in my opinion, compensable (id., pp. 1, 3). Thus, preparation of legal documents is legal work, and legal knowledge is important when filing documents in CM/ECF, which requires the filer to attach the appropriate code to the document. Especially considering that those filings typically occurred in conjunction with legal document preparation, and the time expenditures were very small, compensation is appropriate for those

tasks.  Accordingly, I recommend that the defendant's objections to the following entries (id., pp. 1-3) be rejected:

| | | |
|---|---|---|
| 8/1/13 | .15 hours by PR for the preparation and filing of the case management report in CM/ECF |
| 8/9/13 | .15 hours by PR for the preparation and filing of the return of service in CM/ECF |
| 9/6/13 | .5 hours by PR for preparation and mailing of Rule 30(b)(6) notice of deposition |
| 10/24/13 | .15 hours by PR for filing joint motion to approve the mediation settlement agreement |

The defendant argues that paralegal time spent preparing the lawsuit for filing was clerical work (Doc. 30-2, p. 1; 4/26/13).  This task arguably necessitates the expertise of a paralegal, as it involves preparation of legal documents: the civil cover sheet, summonses, and attachments to the complaint.  Therefore, it is compensable.

The defendant also identifies under this heading several entries which it contends should be reduced for excessive time.  Thus, the defendant argues that 30 minutes is excessive for a conference between counsel and the

plaintiff regarding the deposition of the corporate representative (id., p. 2; 9/23/13).  Initially, it is noted that the conference was not limited to a discussion of that deposition, but also included a discussion about the case in general (id.).  Furthermore, in itself, a 30-minute conversation with a client on multiple topics does not appear excessive.  Importantly, the defendant offers no suggestion as to what would be an appropriate amount of time for counsel to confer with his client.  See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1301 ("Generalized statements that the time spent was reasonable or unreasonable ... are not particularly helpful and not entitled to much weight").  Therefore, the objection is properly rejected.

The defendant also argues that the time billed in connection with the corporate representative's deposition was excessive.  Plaintiff's counsel disputes that contention, arguing that it was his thorough preparation that "led to the damning testimony provided by Defendant's owner" (Doc. 37, p. 3).

The defendant contends that Celler spent a total of 11.3 hours preparing and attending the corporate representative's deposition (Doc. 30-2, pp. 2, 3; see Doc. 25-1, 9/23/13, 2.1 hours; 9/26/13, 5.3 hours; 9/27/13, 5.9 hours).  However, plaintiff's counsel did not spend 11.3 hours on deposition-

related matters, as one of those time entries includes other unrelated tasks (see Doc. 25-1, 9/26/13). Furthermore, this objection is conclusory, and the plaintiff does not explain what would have been a reasonable amount of time for this important task. See Norman v. Housing Authority of City of Montgomery, supra. In all events, the 9/26/13 entry for deposition preparation and record review totaling 5.3 hours was excluded on other grounds (see supra, p. 18). Therefore, the plaintiff is actually being compensated for 8 hours of attorney time related to that deposition, and that is clearly not an excessive amount of time under these circumstances.

The defendant also argues that 4.2 hours preparing the motion for attorney's fees and costs was excessive because plaintiff's counsel routinely files such motions (Doc. 30-2, p. 3; see Doc. 25-1, p. 10; 10/22/13). Time preparing the motion for attorney's fees and costs is compensable. Thompson v. Pharmacy Corp. of Am., Inc., 334 F.3d 1242, 1245 (11th Cir. 2003) (where attorney fees are allowed to the prevailing party by federal statute, the compensable fees include time spent litigating both the entitlement to and amount of fees incurred); Wolff v. Royal American Management, Inc., supra 2013 WL 5433773 at *4 (awarding "fees for litigating fees" in a FLSA case).

Billing more than 4 hours for what is essentially a boilerplate motion for attorney's fees is arguably excessive; however, the defendant does not suggest how much time should be reduced and, importantly, plaintiff's counsel has not billed for reviewing the defendant's opposition to the fee motion or for drafting the plaintiff's reply (Doc. 37, p. 4 n.1). Therefore, any excessive time related to the drafting of the attorney's fee motion entry is offset by plaintiff's counsel not billing for the additional time related to the motion for fees. Consequently, I recommend that this time entry not be reduced.

The defendant argues further that time spent drafting discovery requests and preparing initial disclosures should be reduced because "less expensive associates should have been used" for those tasks (Doc. 30, p. 6; Doc. 30-2, pp. 1, 2; 7/18/13, 8/20/13, 8/29/13). It is undisputed that those tasks are legal work and, therefore, are compensable. The defendant, furthermore, cites no controlling legal authority that time spent by a partner on legal work should be reduced because it could have been done by an associate with a lower hourly rate.

Notably, counsel explained that, at plaintiff's firm, they do not have a "tiered level of representation" on single-plaintiff cases, so that there

was no junior attorney assigned to this case to handle tasks the defendant contends should have been completed by attorneys with lower rates (Doc. 37, p. 2, ¶3). Furthermore, the complexity of the work was a consideration when determining counsel's hourly rate. Thus, in recommending that Celler's hourly rate be reduced from $425 to $300, the complexity of the case and the type of work performed were considered.   I therefore recommend that the defendant's objection on the ground that legal work should have been performed by junior attorneys be rejected.

In sum, under the category of "clerical or excessive time," I recommend that the billkeepers' time be reduced as follows:

JMR:     .75
PR:      1.5
Celler:  .3

### 3.  "Unnecessary Motion Practice"

The defendant next objects to time spent by plaintiff's counsel on legal work that it claims was "unnecessary," and argues gratuitously that "[p]laintiff's counsel engaged in unnecessary motion practice meant to increase the amount of attorneys' fees" (Doc. 30, p. 7).  Specifically, the defendant argues that the Plaintiff's Motion to Compel the Defendant's Initial Disclosures

was unnecessary because, although the defendant's disclosures were late, the plaintiff could have culled that information from the defendant's discovery responses (id.; Doc. 30-4, p. 1).[3]  However, the plaintiff was entitled under the Federal Rules of Civil Procedure to those initial disclosures, see Rule 26(a), F.R.Civ.P., which the  defendant admittedly did not produce timely.

Additionally, the defendant specifies that the Motion to Compel was denied (Doc. 30, p. 8). However, the motion was not denied for lack of merit, but rather because it was rendered moot when the defendant provided its initial disclosures (Doc. 15). Consequently, the defendant's objections to time entries related to the plaintiff's Motion to Compel (Doc. 30-4, p. 1; 9/6/13, 9/23/13, 9/30/13) are properly rejected.

The defendant also objects to time spent drafting the plaintiff's Motion to Amend the Complaint because it was done on the eve of mediation (Doc. 30, p. 8; Doc. 30-4, p. 1; 10/9/13). This argument is unavailing because it presumes that plaintiff's counsel believed the case would likely settle at

---

[3]The defendant also argues that plaintiff's counsel attempted to overcharge for attorney's fees incurred in the filing of that motion.  Thus, the defendant stated that plaintiff's counsel told the defendant he spent 3.9 hours on that motion, but he seeks reimbursement from the court for only 1.2 hours (Doc. 30, pp. 8-9).  The plaintiff responded at the hearing that, in the exercise of his billing judgment, he reduced the amount of time in the fee application.

mediation, and the circumstances do not compel that conclusion. To the contrary, plaintiff's counsel stated that the defendant had been non-responsive to several requests to resolve the case and, as of the day before the mediation, the defendant had not come close to offering a settlement that the plaintiff considered reasonable (Doc. 25, p. 1, ¶3; Doc. 37, pp. 1, 2). In particular, plaintiff's counsel told opposing counsel on the eve of mediation that he expected the mediation would be "very short," apparently because the defendant's latest offer of settlement was too low (Doc. 30-6).

Notably, the plaintiff proposed to amend his complaint to add, inter alia, the defendant's corporate representative as an individual defendant (Doc. 18). Therefore, it would not be unreasonable to conclude that the plaintiff's effort to amend the complaint actually encouraged the settlement. Therefore, the defendant has not identified a cognizable basis to discount attorney's fees related to the plaintiff's amended complaint.

The defendant also objects to .4 hours spent reviewing and responding to the defendant's Emergency Motion for Protective Order (Doc. 30, pp. 7-8; Doc. 30-4, p. 1; 9/27/13). The defendant argues that the plaintiff should not be reimbursed for that time because the motion was necessitated

by the plaintiff's unreasonable refusal to reschedule the deposition of Javier Rodriguez (Doc. 30, pp. 7-8). Plaintiff's counsel, however, represents that he was not told until the night before the scheduled deposition that Rodriguez was definitely unavailable, and that he refused to continue the deposition at that time because he did not have his calendar with him and was under the misimpression that the discovery deadline was imminent (see Doc. 14). Plaintiff's counsel agreed the following day to continue the deposition (id.). Therefore, the defendant has failed to show that plaintiff's counsel's initial refusal to reschedule the Rodriguez deposition was unreasonable. Rather, it appears that a less than amicable relationship between the lawyers has caused some multiplication of proceedings, for which both parties bear some responsibility.

The defendant's last objection under this heading is to a time entry for revising billing records to remove "short-hand and duplicative entries" (Doc. 30-4, p. 1; 10/24/13). That is administrative work which is not properly charged to a paying client and, accordingly, is not chargeable to the opposing party. Hensley v. Eckerhart, supra, 461 U.S. at 434; see Swetic v. Silverberg Jewelry Co., supra, 2012 WL 555960 at *6 (rejecting reimbursement of

attorney's fee for revising fee ledger because it is clerical work).   Accordingly,
I recommend that .4 hours spent revising time sheets be deducted.

In sum, under the category of "clerical or excessive time," I
recommend that the following time be reduced:

Celler: .4

4. "Travel time"

The defendant also argues in its opposition memorandum that
plaintiff's counsel's travel time is not compensable (Doc. 30, pp. 6-7).   In this
regard, the defendant seeks a reduction of attorney Kayfus's billing entry of
6 hours for travel and attendance at the mediation.   The defendant does not
identify how much time should be reduced for travel.

In my opinion, an attorney's travel time to a mediation is
compensable, as it is time the attorney spends in furtherance of the client's case
and it reduces the time the attorney can work on other billable legal matters.
See Swetic v. Silverberg Jewelry Co., supra, 2012 WL 555960 at *5
(reimbursing travel time).   Therefore, that objection is properly rejected.

5. "Sanctions"

The defendant requests in its opposition memorandum that sanctions be imposed against the plaintiff for his attorney's alleged violation of §44.403(1), Fla. Stat., which precludes the disclosure of confidential mediation communications (Doc. 30, pp. 2, 11-12). The defendant's argument is meritless.

This contention regards a statement in the plaintiff's Motion for Attorney's Fees that the defendant offered the plaintiff on the eve of mediation a settlement offer of $7,000, inclusive of attorney's fees (id., pp. 11-12). The plaintiff presented that information in support of his allegation that the defendant unnecessarily prolonged the proceedings by failing to make promptly a reasonable settlement offer (Doc. 37, p. 1).

First, a request for sanctions is properly presented in a separate motion, with a supporting memorandum of law. See Local Rule 3.01(a). The defendant improperly inserted this sanctions request into an opposition memorandum, which does not give the opposing party a proper opportunity to respond. Local Rule 3.01(b). Further, the defendant fails to include legal authority showing that this Florida statute is even applicable to federal court

proceedings. Therefore, based solely on procedural deficiencies, the motion should be denied.

Regardless, the request is meritless. Thus, that settlement offer was made the day before the mediation (Doc. 25, p. 1, ¶3). Therefore, the plaintiff did not disclose mediation confidences. Furthermore, the defendant has not shown that a settlement offer made the day prior to a mediation is necessarily "in furtherance of a mediation." §44.403(1), Fla. Stat.[4] Therefore, the request for sanctions is properly denied.

6. "Summary of hours and lodestar calculation"

In sum, the recommended hourly rates multiplied by the compensable number of hours results in the following lodestar amount:

| Billkeeper | Hourly Rate | Number of Hours | Sum |
|---|---|---|---|
| Richard Celler | $300 | 33.3 | $9,990.00 |
| Amanda Kayfus | $150 | 6.0 | $ 900.00 |
| paralegal PRM | $ 95 | 1.65 | $ 156.75 |
| paralegal JR | $ 95 | 0.85 | $ 80.75 |
| paralegal LN | $ 95 | 0.1 | $ 9.50 |
| **Total Lodestar** | | | **$11,137.00** |

---

[4] A mediation communication is "an oral or written statement, or nonverbal conduct intended to make an assertion, by or to a mediation participant made during the course of a mediation, or prior to mediation is made in furtherance of a mediation." §44.403, Fla. Stat.

IV.

After the lodestar is determined, the court must next consider the necessity of an adjustment for results obtained. However, as reiterated by the U.S. Supreme Court in <u>Perdue</u> v. <u>Kenny A. ex rel. Winn</u>, 559 U.S. 542, 552 (2010), there is a "strong" presumption that the lodestar reflects a reasonable statutory fee.

The plaintiff does not request an increase of the lodestar. Although the defendant does not make a specific request to reduce the lodestar, it asserts generally that the court should consider the proportionality of the attorney's fee in comparison to the amount of damages (Doc. 30, p. 3). However, the plaintiff argues correctly that, in order to achieve the remedial goal of the FLSA, strict proportionality cannot be employed (Doc. 25, pp. 7-8).

In <u>City of Riverside</u> v. <u>Rivera</u>, 477 U.S. 561, 574 (1986), the Supreme Court rejected the proposition that "fee awards ... should necessarily be proportionate to the amount of damages" where a plaintiff "vindicate[s] important ... rights that cannot be valued solely in monetary terms." As I stated in <u>Wales</u> v. <u>Jack M. Berry, Inc.</u>, 192 F.Supp.2d 1313, 1327 (M.D. Fla. 2001),

the FLSA is an important piece of social legislation. Accordingly, the public also derives a benefit from the plaintiff's recovery on his FLSA claim. Id.

Furthermore, a rule of proportionality would impair the purpose of the FLSA attorney fee shifting provision, which is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." Fegley v. Higgins, 19 F.3d 1126, 1134-35 (6th Cir. 1994). Since FLSA cases frequently do not involve substantial amounts of money, a rule of proportionality would dissuade lawyers from taking the case on a contingency basis. See id.; Odil v. Evans, 2005 WL 3591962 at *3 (M.D. Ga.). Notably, the Eleventh Circuit recently affirmed an attorney's fee of more than $100,000 in a FLSA case where the damages award was $28,000. See Galdames v. N&D Investment Corp., supra, 432 Fed. Appx. at 802.

In this case, the plaintiff was completely successful – he obtained a settlement with the maximum monetary relief pursuant to the FLSA. Furthermore, the lodestar, which is presumed to be a reasonable fee, is far less than the attorney's fee requested by the plaintiff. Therefore, to the extent that the defendant argues that the court should reduce the lodestar to make it

proportionate to the amount of damages in this case, that contention is appropriately rejected.

## V.

Finally, the plaintiff seeks recovery of costs totaling $2,243.69 (Doc. 25-1, pp. 11-12). These costs comprise $470 in filing and service fees, $174.30 for a deposition transcript, $69.50 for photocopies, $1,200 for the attorney's fee expert fee, and $329.89 for "other costs" (id.).

Under federal law, the prevailing party is entitled to reimbursement for costs enumerated in 28 U.S.C. 1920. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). However, the Supreme Court has emphasized that costs awarded under this provision are limited to the list of items set forth in 28 U.S.C. 1920 and related statutes. Id. Although the plaintiff does not identify in his motion the legal basis for recovery of his costs, plaintiff's counsel agreed at the hearing that he is seeking costs pursuant to §1920.

The defendant does not dispute that the plaintiff is entitled to reimbursement of his filing and service fees totaling $470 (see Doc. 30, pp. 10-11). However, the defendant objects to the remaining costs (id.).

-37-

The defendant objects to reimbursement for a transcript of the corporate representative's deposition because plaintiff's counsel allegedly did not order the transcript until the day before the mediation. Thus, the defendant argues that the plaintiff should have cancelled that request after the matter settled at mediation (id., p. 11). Plaintiff's counsel responded at the hearing that the transcript was ordered on October 3, 2013, the week prior to the mediation, for counsel's use at the mediation. Giving the plaintiff's counsel the benefit of the doubt as to when the transcript was ordered, the cost of the transcript should be reimbursed.

The defendant also contends that the plaintiff is not entitled to recover his photocopying costs because he failed to state the purpose of the photocopying (id., p. 10). Pursuant to §1920(4), only photocopying "necessarily obtained  for use in the case" is compensable. Thus, general copying for the convenience of counsel is not recoverable under this statute. See Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996).

The burden of establishing entitlement to photocopying expenses lies with the prevailing party. See Desisto College, Inc. v. Town of Howey-in-the-Hills, 718 F.Supp. 906, 910 n.1 (M.D. Fla. 1989), aff'd, 914 F.2d 267 (11th

Cir. 1989). The plaintiff made no attempt to identify the purpose of the photocopying and, therefore, the court lacks the information from which it could conclude that the photocopying was necessarily obtained for use in the case. See id. at 914 (denying reimbursement for photocopying because the defendants failed to differentiate between copies necessarily obtained for use of the case and those for convenience). Therefore, the photocopying cost of $69.50 is not compensable.

Next, the defendant objects to the plaintiff's "other costs" totaling $329.89 (Doc. 30, p. 11). The "other costs" include "reimbursement for airfare and travel expenses re: mediation," telephone calls, and postage (Doc. 25-1, p. 12; Doc. 25-3, pp. 6-8). Those costs, on their face, do not fit within any of the compensable categories in §1920. See Crawford Fitting Co. v. J.T. Gibbons, Inc., supra, 482 U.S. at 445 (costs awarded under this rule are limited to the list of items set forth in 28 U.S.C. 1920 and related statutes). Furthermore, the plaintiff does not provide any legal authority that they are compensable under §1920. Accordingly, none of the "other costs" listed by the plaintiff is taxable.

Finally, the defendant objects to reimbursement of the fee charged by the plaintiff's attorney's fee expert, arguing that it is not a taxable cost (Doc. 30, p. 11). The plaintiff listed this expense on his bill of costs under "compensation of court-appointed experts" (Doc. 25-1, p. 11). However, the plaintiff's attorney's fee expert was not appointed by the court and, therefore, his fee is not taxable. Glenn v. General Motors Corp., 841 F.2d 1567, 1575-76 (11th Cir. 1988), cert. denied, 488 U.S. 948 (1988); Padurjan v. Aventura Limousine & Transportation Service, Inc., supra, 441 Fed. Appx. at 686-87 (plaintiff's expert witness fee in a FLSA case was not taxable because no statute applicable in this case provides for reimbursement of such fees).

Thus, as the Eleventh Circuit stated in Glenn v. General Motors Corp., supra:

> [A]lthough a statute may shift attorney fees, the statute does not operate to shift witness fees unless the statute refers explicitly to witness fees. In the present case, Section 216(b) does not refer explicitly to witness fees. In addition, nothing in the legislative history associated with Section 216(b)'s passage suggests that Congress intended the term "costs of the action" to differ from those costs as now enumerated in 28 U.S.C.A. § 1920.

The plaintiff, moreover, provides no legal authority to the contrary. Therefore, Fenton's $1,200 expert fee is not compensable.

In sum, pursuant to §1920, the plaintiff is entitled to reimbursement for costs totaling $644.30, comprised of the filing fee, summonses, and deposition transcript. As indicated, the plaintiff has failed to show that his copying costs, the experts fee, or the "other costs" are compensable under §1920.

VI.

For the foregoing reasons, I recommend that the plaintiff be awarded $11,137.00 in an attorney's fee, and $644.30 in costs, pursuant to 29 U.S.C 216(b) of the FLSA.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: FEBRUARY 21, 2014

<u>NOTICE TO PARTIES</u>

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date

of its service shall bar an aggrieved party from attacking the factual findings

on appeal.  28 U.S.C. 636(b)(1).